IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| NATHANIEL DAVID CURRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:23-CV-30 (WLS) |
| | : | |
| WESTERN EXPRESS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

### ORDER

Before the Court is Defendant Western Express, Inc.'s ("Defendant") Motion to Dismiss for Lack of Jurisdiction (Doc. 7). Therein, Defendant moves to dismiss all claims against it in Plaintiff's Amended Complaint (Doc. 4) under Federal Rule of Civil Procedure 12(b)(1)-(6). For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.   BACKGROUND

#### A. Relevant Procedural Background

On March 17, 2023, Plaintiff, proceeding pro se, commenced this action by filing a Complaint (Doc. 1) against his former employer, Defendant. Therein, Plaintiff alleges claims for discrimination under Title VII of the Civil Rights Act and the Americans with Disabilities Act, as well as a claim for breach of contract. The Court granted Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. 2), and ordered Plaintiff to file an amended complaint and to properly serve Defendant. Plaintiff filed an Amended Complaint (Doc. 4) on March 15, 2024, which became the operative complaint.

On May 1, 2024, the Court again instructed Plaintiff to serve Defendant with a summons and the Amended Complaint in accordance with Federal Rule of Civil Procedure 4(m). (Doc. 5). On June 6, 2024, Plaintiff filed an Acknowledgement of Service (Doc. 6), which contained a summons executed by the Davidson County, Tennessee Sherriff's Office. Defendant filed the instant Motion to Dismiss (Doc. 7) on July 16, 2024. The Court

1

provided notice to Plaintiff of his right to file a response to the Motion (Doc. 8), and Plaintiff filed a Response (Doc. 9) on August 23, 2024. Defendant filed a Reply (Doc. 10) on September 6, 2024. As the Parties' respective briefs have been submitted, the Motion is ripe for ruling.

### B. Plaintiff's Allegations

As alleged, Defendant is an interstate motor carrier that provides transportation of freight across the United States. (Doc. 7-3 ¶ 4). On or about February 9, 2022, Defendant entered into an Independent Contractor Operating Agreement ("the Contract") with Plaintiff. (Doc. 1-3). The Contract specifically designated Plaintiff as an independent contractor, and not an employee of Western Express. (*See generally id.*) The Parties also entered into a "Lease Agreement with Option to Purchase" ("Lease Agreement") by which Plaintiff agreed to lease one International Prostar semi-truck with the option to later purchase the vehicle. (Doc. 1-4). Under the Lease Agreement, Plaintiff was responsible for all maintenance and repair costs, maintaining insurance on the truck, and paying all taxes and other permit and licensing fees. (*Id.* at 1–2). Plaintiff was also obligated to maintain an escrow fund under both of the agreements. (*See generally* Docs. 1-3 & 1-4).

On July 8, 2022, while hauling a freight load in Nevada, Plaintiff became ill and notified his dispatcher that he would need to return home to Georgia and receive medical care. (Doc. 4 at 1). The dispatcher allegedly denied Plaintiff's request to return home and "even threatened [sic] [Plaintiff] to stay out there." (Doc. 1 at 5). Nevertheless, Plaintiff departed for Georgia on July 9, 2022, and was hospitalized for, among other things, acute respiratory failure and pneumonia on July 15, 2022. (Doc. 4 at 2); (*see* Doc. 1-2 at 2). While in the ICU, Plaintiff's dispatcher called to inquire whether Plaintiff would return the semi-truck to Defendant. (Doc. 4 at 2). Plaintiff's wife informed the dispatcher of Plaintiff's severe condition. (*Id.*) Plaintiff was discharged from the hospital on July 19, 2022, and upon returning home, he found Defendant's agent repossessing the semi-truck. (*Id.* at 3). Plaintiff did not consent to the semi-truck being taken from his possession. (*Id.*) Plaintiff later discovered that he was "fired" by Defendant on July 19, 2022, without notice and while still in the ICU. (*Id.*)

The Amended Complaint seeks approximately $10,000 in damages that Plaintiff alleges was withheld from an escrow account. (Doc. 4 at 4). Plaintiff also seeks damages resulting

2

from his hospitalization, stating states that he feels that he "should be compensated for [Defendant] prolonging [his] illness." (Doc. 1 at 6).

## II. LAW AND ANALYSIS

### A. Personal Jurisdiction

Defendant seeks dismissal under Rule 12(b)(2), contending that, as a Tennessee corporation, the Court lacks personal jurisdiction over it. Generally, "[i]n analyzing a motion to dismiss . . . under Fed. R. Civ. P. 12(b)(2), [a court] first determine[s] whether the applicable statute potentially confers jurisdiction over the defendant, and then determine[s] whether the exercise of jurisdiction comports with due process." *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (citing *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991) and *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir. 1989)).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Plaintiff makes out such "[a] prima facie case if [he] presents sufficient evidence to defeat a motion for directed verdict." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citing *Delong v. Wash. Mills*, 840 F.2d 843, 845 (11th Cir. 1988)). The Court "must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Id.*

1. *Statutory Basis*

Beginning with the statutory basis for personal jurisdiction, "[w]hen jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs [a court] to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996) (citing *Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 855 (11th Cir. 1990)). Because the Court's jurisdiction is based on claims under Title VII and the ADA, and those statutes are silent on the issue of service, *see* 42 U.S.C.

3

§§ 2000e *et seq.* and 42 U.S.C. §§ 12201 *et seq.*, the Court looks to the Georgia long-arm statute. *See Sculptchair*, 94 F.3d at 626–27.

One provision of the Georgia Long Arm Statute is relevant here. *See Diamond Crystal*, 593 F.3d at 1260 ("[T]he exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied."). Plaintiff contends generally that Defendant "covers Georgia and does business in Georgia." (Doc. 9 ¶ 3). Construing Plaintiff's allegations liberally, as required, the Court finds that the second prong of the long-arm statute is satisfied here. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

Under the second prong of Georgia's statute, personal jurisdiction may exist under the long-arm statute if an out-of-state defendant "[c]ommits a tortious act or omission within this state." O.C.G.A. § 9-10-91(1). Like subsection (1), subsection (2) must be interpreted "literally" and requires that the "out-of-state defendant . . . do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 353 (2005). "[A] single event may be sufficient to impose jurisdiction under certain circumstances," if that event is "an act of the nonresident defendant *in the forum* having its impact within the territory of the forum." *Metzler v. Love*, 428 S.E.2d 384, 386 (1993).

As alleged, Defendant sent an unknown individual to Plaintiff's residence in Omega to repossess the semi-truck leased by Plaintiff, despite Plaintiff's timely and current payments under the Lease Agreement. (Doc. 4 at 3). Plaintiff lives in Omega, Georgia, meaning that this act occurred in Georgia. Thus, the Court may exercise personal jurisdiction over Defendant under § 9-10-91(2).

2. *Due Process*

The Court's analysis, however, does not end here. The Court must also determine whether the exercise of jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment. *Diamond Crystal*, 593 F.3d at 1257–58. "Due process requires that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Meier ex rel. Meier v. Sun*

4

*Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) and *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). "The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consolidated Dev.*, 216 F.3d at 1291.

      i.    General Personal Jurisdiction

"'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations,' without offending due process 'when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Carmouche v. Tamborless Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Goodyear Dunlop Tires Operations, S.S. v. Brown*, 564 U.S. 915, 919 (2011)). If a court has general personal jurisdiction over a litigant, it may adjudicate any claim involving that litigant, regardless "of where the cause of action arose." *Oldfield v. Pueblo De Bahio Lora, S.A.*, 558 F.3d 1210, 1221 n.27 (11th Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985) and *Meier*, 288 F.3d at 1274). "A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler AG*, 517 U.S. at 137. Other contacts may also suffice in exceptional cases, but those contacts must be "'so substantial as to render the defendants at home" in the forum state. *Carmouche*, 789 F.3d at 1201.

As alleged, Defendant is a Tennessee corporation with its principal place of business in Nashville, Tennessee. (Doc. 7-1 at 4); (Doc. 11 at 4). So, Georgia is not its paradigmatic all-purpose forum. *See Daimler AG*, 517 U.S. at 137. And entering the state to repossess a vehicle falls short of a contact that is so substantial so as to render Defendant effectively at home in Georgia. As such, the Court cannot assert general personal jurisdiction over Defendant, and whether the Court may adjudicate a claim against it therefore depends on the claim asserted.

      ii.    Specific Personal Jurisdiction

Courts in this Circuit apply a three-part due process test in specific personal jurisdiction cases that evaluates: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking

5

the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal*, 593 F.3d at 1267).

As for the first prong, a plaintiff's claim "must arise out of or relate to at least one of the defendant's contacts with the forum[,]" and the inquiry focuses on the "direct causal relationship between the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010).

Here, Plaintiff's breach of contract claim, as alleged, arises out of Defendant's contact with Georgia. To prevail on a breach of contract claim, Plaintiff must show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (internal citation and quotation omitted). Plaintiff alleges that there was a contract for the lease of the semi-truck, and that Defendant repossessed the semi-truck, even though Plaintiff was up to date on all payments, in violation of the Lease Agreement. (*See* Doc. 4 at 3). Thus, the Court finds that there is a direct, causal relationship between Defendant's contact with Defendant, Georgia, and Plaintiff's claims.

As for the second prong, the Court uses the minimum contacts test to determine whether Defendant has purposefully availed itself of the privilege of doing business in the Georgia. *Louis Vuitton*, 736 F.3d at 1358 (holding that the alternative "effects test" is unavailable in contract cases). Under this test, courts assess the nonresident defendant's contacts with the forum state and ask whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. The analysis involves "identify[ing] all contacts between a nonresident defendant and a forum state and ask[ing] whether, individually or collectively, those contacts satisfy these criteria." *Id.*

6

"The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Hicks v. Bombardier Recreational Prods. Inc.*, 684 F. Supp. 3d 1223, 1239 (S.D. Fla. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). "These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Ford Motor Co.*, 592 U.S. at 360 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). Defendants are provided with "fair warning"— knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Id.* (quoting *Burger King*, 471 U.S. at 472)).

Here, Defendant, by entering the state to repossess property subject to one of its contracts, purposefully availed itself of the Georgia forum in such a way that it could reasonably foresee being haled into a Georgia court.

As for the third prong, to determine whether the exercise of personal jurisdiction over Defendant comports with fair play and substantial justice, the Court considers the following factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)). Because the first two prongs have been established, Defendant must demonstrate that the Court's exercise of personal jurisdiction over it violates "traditional notions of fair play and substantial justice." *Id.* at 1355.

Here, Defendant has not offered any evidence or argument that it would be burdened by litigating this case in Georgia. By contrast, Georgia courts have an interest in adjudicating this dispute because Plaintiff is a Georgia resident, the alleged repossession occurred in Georgia, and Georgia, more generally, has a strong interest in affording its residents a forum to obtain relief. Plaintiff also has a significant interest in obtaining relief in a Georgia court because he is located in the state. By the same token, when Defendant entered Georgia to repossess the semi-truck, Defendant should have reasonably anticipated being haled into a Georgia court.

Based on the foregoing reasons, the Court finds that Plaintiff's claims "arise out of or relate to" at least one of Defendant's contacts with the forum, Defendant purposefully availed itself of the privilege of conducting activities within the forum state, and the exercise of

7

jurisdiction would not violate traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355. Accordingly, the Court may properly exercise personal jurisdiction over Defendant as alleged. Thus, Defendant's Motion to Dismiss under Rule 12(b)(2) is **DENIED**.

### B. Failure to State a Claim

Defendant seeks dismissal under Rule 12(b)(6), contending that, Plaintiff's allegations fail to state a claim for relief. Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm to the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court makes reasonable inferences in plaintiff's favor but is not required to draw plaintiff's inference. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). On a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by

8

factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

1. *Title VII and ADA Claims*

Because Plaintiff is proceeding pro se, the Court liberally construes his complaint. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, even pro se complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff asserts claims under Title VII and the ADA alleging that he was wrongfully terminated from Western Express while being treated for pneumonia in the ICU. (Doc. 1 at 3); (Doc. 4 at 3). Defendant contends that Plaintiff's claims necessarily fail because Plaintiff is an independent contractor, not an employee. For the reasons discussed below, the Court agrees.

As a threshold matter, Title VII and ADA protections extend only to the employment relationship and do not reach independent contractors. *See Perry v. Schumacher Grp. of La.*, 809 F. App'x 574, 579 (11th Cir. 2020) (quoting *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998) ("'We can assume that Congress . . . meant to limit the pool of potential plaintiffs under Title VII.' Only 'employees' may bring a Title VII suit.")); *Schofield v. Atlanta Women's Med. Ctr., Inc.*, No. 1:13-CV-03340, 2015 WL 13653081, at *7 (N.D. Ga. Mar. 3, 2015) (citing *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998) ("The ADA protects against discriminatory actions by an employer against an employee, but does not extend protection to independent contractors."). Thus, the threshold question before the Court is whether Plaintiff was an independent contractor or employee as alleged.

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Although, on its face, this definition is somewhat circular, the Eleventh Circuit assumes that "employee" should take its "common, everyday meaning." *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 339 (11th Cir. 1982). "[E]mployee status under Title VII is a question of federal law." *Id.* To make this determination, courts employ a hybrid-economic-realities test, which examines "the economic realities of the relationship viewed in light of the common law

9

principles of agency and the right of the employer to control the employee."[1] *Id.* at 341. Eleven factors guide the application of the test, including:

> (1) the kind of occupation; whether the work is done under direction of a supervisor or done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or individual furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment; whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Taylor v. BP Exp., Inc.*, No. CV 407-182, 2008 WL 5046071, at *3 (S.D. Ga. Nov. 24, 2008) (citing *Cobb*, 673 F.2d at 340). With respect to the instant Rule 12(b)(6) Motion, the Court must examine the pleadings and determine whether Plaintiff has alleged facts which, if proven, would support a finding of an employer/employee relationship. In considering Plaintiff's employment status, the only information available to the Court is scattered allegations in the pleadings and the Contract and Lease Agreement attached to the Complaint.[2] The Court reviews the relevant factors in light of the allegations and concludes that Plaintiff has not alleged sufficient facts to raise his status as an employee "above a speculative level" as required to state a claim for relief.[3] *Edwards,* 602 F.3d at 1291 (citation omitted).

As to the first factor, the contract indicates that Plaintiff received little to no supervision for his work at Western Express. While Plaintiff was provided with locations for load pickups, the dispatcher did not oversee the details of Plaintiff's job performance in making the hauling

---

[1] Courts in this Circuit also use the common-law agency test to determine whether the plaintiff was an employee under the ADA. *See Eaton v. Nat'l Older Worker Career Ctr.*, No. 7:20-CV-00035, 2020 WL 6585605, at *2 (N.D. Ala. Nov. 10, 2020).

[2] Indeed, the only facts Plaintiff alleges in the Complaint that even remotely indicate an employer/employee relationship are (1) that he put in for time off in sometime before July 8, 2022, and "was refused[,]" (Doc. 4 at 1); and (2) that he was "fired illegal under contract[.]" (Doc. 1 at 3).

[3] The Court reviews the contents the Contract, as is permissible. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

trips. (*See* Doc. 1-3 at 5) ("[Plaintiff], as an independent contractor, has the right to determine the actual route of travel taken in transporting any cargo shipment . . . and at what point and locations drivers shall take rest stops and refuels."). "This kind of interaction, in which the supervisor does not actually supervise how the work is to be done, but is solely interested in the fact that the work is completed, is typical of how an employer might deal with an independent contractor." *Taylor*, 2008 WL 5046071, at *4 (citing *Holloman v. Ne. Ga. Area Dev. Comm'n*, 740 F. Supp. 1571, 1577 (M.D. Ga. 1990) (finding that the plaintiff was an independent contractor, in part, because there was no direct supervision of her day-to-day activities). Thus, the first factor supports an independent contractor relationship.

As for the second factor, the skill required for this occupation requires a finding that Plaintiff is an independent contractor for two reasons. First, a significant amount of skill is required to operate a semi-truck. Second, federal and state laws impose licensing requirements for commercial truck drivers. *See* 49 U.S.C. § 31302; O.C.G.A. § 40-5-140. Indeed, when a worker has procured a state license, this fact weighs in favor of independent contractor status. *Lockett v. Allstate Ins.*, 364 F. Supp. 2d 1368, 1374 (M.D. Ga. 2005) (citing *Schwieger v. Farm Bureau Ins. Co.*, 207 F.3d 480, 485 (8th Cir. 2000) (holding that the second factor "weighs heavily in favor of independent contractor status" when agent considered herself a professional and had a state license). Thus, the considerable skill and licensing requirements for Plaintiff's profession indicate that he is an independent contractor.

As for the third factor, Plaintiff entered into a Lease to Own agreement for the 2020 Prostar truck, the equipment necessary to perform the work. (*See generally* Doc. 1-4). Plaintiff was also responsible for paying all expenses associated with the truck's operation including "paying all operating expenses, including but not limited to fuel, maintenance, repairs, equipment required for electronic logging compliance, the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates, licenses," and more. (Doc. 1-3 at 8). Thus, this factor also favors a finding that Plaintiff was an independent contractor.

As for the fourth factor, the longer the working relationship, the more likely the individual is an employee. *Lockett*, 364 F. Supp. 2d at 1375 (citing *Wilson v. United Farm Bureau Mut. Ins.*, 1995 WL 378521, *8 (S.D. Ind. June 15, 1995)). Plaintiff was only employed by

Western Express for a period of approximately five months. (*See generally* Docs. 1, 1-3, & 4). This short duration of the working relationship weighs in favor of Plaintiff's role as an independent contractor.

As for the fifth factor, the employer's method of payment, the method in this case indicates that Plaintiff is an independent contractor. Plaintiff was paid per trip, rather than by the hour. (Doc. 1-3 at 1) ("For the performance of each trip made by [Plaintiff] . . . [Defendant] agrees to pay the amount negotiated and agreed to[.]"). Payment by the job completed, rather than a salaried or hourly payment, signals an independent contractor relationship. *See Lockett*, 364 F. Supp. 2d at 1375; *Holloman*, 740 F. Supp. at 1576.

As for the sixth factor, Both Plaintiff and Western Express had the ability to terminate the working relationship, which again, points to Plaintiff as an independent contractor. (Doc. 1-3 at 15) (discussing automatic renewal of the contract "unless either party gives advance written notice to the other party of that party's decision not to renew the Contract"); *see Lockett*, 364 F. Supp. 2d at 1374; *Sica v. Equitable Life Assurance Soc'y of the U.S.*, 756 F. Supp. 539, 542 (S.D. Fla. 1990) (explaining that equal rights of both to fire and resign indicate independent contractor status).

As for factors seven, nine, and ten, Plaintiff was not afforded annual leave, did not accumulate retirement benefits, and Western Express did not pay any social security tax in connection with Plaintiff. (Doc. 1-3 at 6) ("[Plaintiff] will not be eligible for, or receive, any benefits provided by [Defendant] to its employees and [Plaintiff] hereby specifically waives and declines all such benefits . . . . [Defendant] will file with the IRS, FORM 1099 regarding payments made to [Plaintiff] under this Contract."). Thus, these factors weigh heavily in favor of the conclusion that Plaintiff is not an employee. *See McKensize v. Davenport-Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987) (deduction of social security from plaintiff's commission checks indicated that plaintiff was not an independent contractor); *Holloman*, 740 F. Supp. at 1576 (employer's failure to pay social security taxes on plaintiff led court to conclude he was not an employee).

Finally, as for the eleventh factor, the intention of the Parties indicates that Plaintiff was an independent contractor. The terms of the agreement serve as the manifestation of the parties' intent. *See Bates v. Variable Annuity Life Ins.*, 200 F. Supp. 2d 1375, 1379 (N.D. Ga.

2002) (examining the contract terms to determine whether insurance agent is an independent contractor). Further, contract provisions that refer to Plaintiff as a "contractor" must be given great weight. *Holloman*, 740 F. Supp. 1571, 1577 (M.D. Ga. 1990). Here, the intention of the Parties could not have been clearer. The Contract unambiguously states that "[t]his contract is intended by the parties to create the relationship of INDEPENDENT CONTRACTOR between CONTRACTOR and CARRIER and not the relationship of employer/employee . . . ." (Doc. 1-3 ¶ 3). Thus, this factor too weighs in favor of an independent contractor relationship.

Thus, the relevant factors reflect that Plaintiff, as alleged, was an independent contractor, not an employee.[4] Plaintiff has, therefore, failed to sufficiently allege that he was an employee within the meaning of Title VII and the ADA. As such, Defendant's Motion to Dismiss with respect to those claims is **GRANTED**. Plaintiff's claims under Title VII and the ADA are thus **DISMISSED, with prejudice**.[5]

### C. Subject Matter Jurisdiction

Defendant moves under Rule 12(b)(1), arguing that if the Court dismisses Plaintiff's federal claims, it should dismiss Plaintiff's breach of contract claim because the Court does not have subject matter jurisdiction, as the requirements of diversity jurisdiction are not met. (Doc. 7-1 at 5). There are two paths to the Court's exercise of subject matter jurisdiction. For the reasons discussed below, however, the Court finds that neither avenue confers jurisdiction.

First, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "District courts have supplemental jurisdiction over all other claims, including state law claims, that are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Siler v. Hancock Cnty. Bd. of Educ.*, 510 F. Supp. 2d 1362, 1382 (M.D. Ga. 2007) (quoting 28 U.S.C. § 1367(a)), aff'd, 272 F. App'x 881 (11th Cir. 2008). A district court "may decline to exercise supplemental

---

[4] The Court acknowledges, however, that factor eight, whether the work is an integral part of the business of the employer, weighs in favor of an employee classification. Even so, the overwhelming majority of the factors demonstrate an independent contractor relationship.

[5] The Court declines to make a finding regarding the sufficiency of Plaintiff's breach of contract claim because, as discussed below, the Court declines to exercise supplemental jurisdiction over that state law claim.

jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." *Id.* § 1367(c). When deciding whether to exercise supplemental jurisdiction over a state-law claim the Court should consider "judicial economy, fairness, and comity[.]" *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (citing *Baggett v. First Nat'l Bank of Gainesville*, 177 F.3d 1271, 1353 (11th Cir. 1997)). Both comity and judicial economy are served when state courts are given the opportunity to resolve issues of state law. *Rowe*, 279 F.3d at 1288. And this argument to decline jurisdiction is particularly strong when federal law claims have been dismissed prior to trial. *Id.*

Here, the Court has granted Defendant's Motion to Dismiss Plaintiff's federal claims under Title VII and the ADA. Considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. As such, the Court makes no determination as to the merits of Plaintiff's claim for breach of contract.

Second, the Court agrees with Defendant that the requirements of diversity jurisdiction are not met. Diversity jurisdiction under 28 U.S.C. § 1332 is determined at the time the complaint is filed. *Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012). To satisfy the requirements of diversity jurisdiction, the citizenship of each plaintiff must be different from that of each defendant. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). The allegations in the complaint must sufficiently allege the citizenship of the parties, and that the amount in controversy exceeds $75,000. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269–70 (11th Cir. 2013); 28 U.S.C. § 1332(a). Here, while Plaintiff sufficiently alleges the citizenship of the Parties—himself as a citizen of Georgia and Defendant as a citizen of Tennessee—he has not sufficiently alleged that the disputed amount for his breach of contract claim exceeds $75,000. Indeed, the only sum Plaintiff alleges is $10,054.80 that he claims Defendant wrongfully withheld from his escrow account, in violation of the Parties' contract. (Doc. 4 at 4); (*see* Doc. 4-2 at 15).

In sum, because the Court declines to exercise supplemental jurisdiction over the breach of contract claim and because Plaintiff fails to allege sufficient facts to establish diversity jurisdiction, Defendant's Motion to Dismiss (Doc. 7) under Rule 12(b)(1) is **GRANTED**. Accordingly, Plaintiff's state-law claim is **DISMISSED, without prejudice.**

## CONCLUSION

In sum, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED-IN-PART** and **DENIED-IN-PART.** Defendant's Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction is **DENIED**. Defendant's Motion to Dismiss under Rule 12(b)(6) with respect to Plaintiff's federal Title VII and ADA claims is **GRANTED**. Those claims are therefore **DISMISSED, with prejudice**.[6] Finally, Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is **GRANTED**. Plaintiff's state law breach of contract claim is thus **DISMISSED, without prejudice**.

**SO ORDERED**, this 26th day of March 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6] The Court dismisses the federal Title VII and ADA claims with prejudice because it has original jurisdiction over those claims and thus, adjudication on the merits is proper.